WEST HUNTSVILLE COTTON MILLS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HUNTSVILLE WAREHOUSE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17843, 18741, 18743. Promulgated April 16, 1931.

*William S. Pritchard, Esq.*, for the petitioners.
*Byron M. Coon, Esq.*, for the respondent.

1218

OPINION.

TRAMMELL: The issues relating to salary deductions have been settled by stipulation of the parties, in accordance with which we have found that the petitioner, West Huntsville Cotton Mills Company, is entitled to deduct from its gross income for the fiscal year ended August 31, 1918, the amount of $6,525.86 on account of salary paid in said year to T. W. Pratt, its president and secretary. The allowance of said amount is in lieu of a deduction of $15,000 claimed by the petitioner and $3,600 allowed by the respondent.

As stipulated by the parties, we have found that the petitioner, Huntsville Warehouse Company, is entitled to deduct from gross income for the fiscal year ended August 31, 1919, the amount of $3,600 on account of salary paid in said year to T. W. Pratt, its president and treasurer, which is the amount allowed by the respondent. No other deductions for salary are claimed by or allowable to either petitioner, and the deficiencies will be recomputed accordingly.

This leaves for decision here the single issue whether or not the petitioner corporations were affiliated during the taxable years within the meaning of section 240 (b) of the Revenue Act of 1918, which provides that:

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated * * * (2) if substantially all of the stock of two or more corporations is owned or controlled by the same interests.

The respondent determined that the corporations were affiliated during the first taxable year, that is, the fiscal year ended August 31, 1918, and computed the deficiency for said year on the basis of a consolidated return. The respondent determined that the corporations were not affiliated during the fiscal years ended August 31, 1919, and 1920, and computed the deficiencies for those years on the basis of separate returns.

The petitioners allege that either they were not affiliated during any of the taxable years or were affiliated during all of the taxable years, and contend that if the respondent was correct in forcing consolidation for 1918, which resulted in an increased tax liability, then, since there was no change in stock ownership or control during the two remaining taxable years, they are entitled as a matter of right to such benefits as result from having their tax liability computed for those years on a consolidated basis also.

The issue being raised as to the correctness of the respondent's determination respecting affiliation in 1918, we may not merely examine the record to determine whether or not there was any change in stock ownership or control in the subsequent years. The action of the Commissioner in requiring affiliation for 1918 is presumed to be correct, but affiliation for 1919 and 1920 can not be established by estoppel of the Commissioner on account of his action in a prior year. The precise question presented here is whether or not "substantially all of the stock" of the two corporations was "owned or controlled by the same interests" during all of the taxable years.

In many respects, the evidence adduced is unsatisfactory in so far as it bears on the issue above stated. The stock record books of the two corporations were offered in evidence. They were in a confused state and from them it is difficult to determine the facts as to stock ownership during the respective years, but a statement of the stock ownership of each corporation was made up from the books. These statements, the parties stipulated, correctly set forth the ownership of the stock in the taxable years as disclosed by the stock books. From these statements, we have set forth in our findings of fact the names of the stockholders of each company, the number of shares shown to have been owned by each during each of the taxable years, and the percentages of the outstanding stock so standing in the names of such persons.

In addition, the petitioners offered the testimony of the witness Stanley on the question of stock ownership. This witness became connected with the corporations in 1899, and has been with them continuously to the present time. Originally he was the bookkeeper, and later office manager, for both companies. He testified that the stock books disclosed the true ownership of the stock of the petitioners during the taxable years "absolutely," but also testified contrary to the books and the stipulated statements as to their contents. A portion of his testimony is as follows:

Q. Now, I will ask you whether shortly after this [beginning of the first taxable year] Mr. Pratt acquired the shares of Messrs. Coons, Winright and Fenhagen too?

A. No, he acquired, as I understand it, he acquired the shares of most of these long before this.

Q. I am wondering if your list is correct?

A. That is what I am wondering too. He must have had Winright's long before this.

It appears that the witness was testifying from a memorandum apparently inconsistent with the books which had been made up by some undisclosed person, and that he, the witness, had no personal knowledge on the subject. The witness stated that he had "never had charge of the certificate books," and was not familiar with the

contents of those records. We do not think that this witness' testimony, which is contrary to the book records and statements taken therefrom, is entitled to weight, since he had no personal knowledge of the facts.

The stock book of the cotton mills company shows that certain certificates were canceled, the dates of cancellation not being shown, and that the stock was not thereafter reissued. Other certificates are shown merely to have been canceled and the dates of cancellation not shown. However, the record does not establish that the stock book of either company is in any wise incorrect, but only incomplete in the particulars mentioned. In finding the facts, we have accepted these records as establishing the ownership of the stock of the petitioners during the taxable years, in so far as definitely shown. We can not assume that stock shown by the certificate book to have been canceled was canceled subsequent to the taxable years, nor can we assume or find that canceled stock was reissued, or that any assignments were made, in the absence of some evidence. On the question of the relationship of the parties the witness was asked a question which purported to set forth certain relationships between the parties, but it does not appear that the witness answered the question or even intended to affirm the statement.

Affiliation is a question of fact and a statutory status, the determination of which depends upon the evidence in each case, and must be determined separately for each year. *D. J. & T. Sullivan, Inc.*, 17 B. T. A. 1258, and authorities there cited.

In *Continental Products Co.*, 20 B. T. A. 818, we discussed at length the question of what constitutes " control " of corporate stocks and what constitutes " the same interests " within the meaning of the taxing statute. There we reviewed many of the court decisions on the subject and referred to our own prior decisions. And, in the light of the facts disclosed by the evidence before us in the present proceedings, a discussion in detail of these points is not deemed necessary here.

The record shows that during the fiscal years ended August 31, 1918, and August 31, 1919, C. D. Fenhagen owned 125 shares or 42.38 per cent of the total outstanding stock of the cotton mills company, and did not own any stock in the warehouse company. During the fiscal year ended August 31, 1920, Fenhagen owned 75 shares or 30.47 per cent of the outstanding stock of the cotton mills company, and no stock in the warehouse company.

During the fiscal years ended in 1918 and 1919, Gordon M. Buck owned 125 shares or 25 per cent of the stock of the warehouse company, and did not own any stock in the cotton mills company. During the fiscal year 1920, Buck owned no stock in either company.

During all three fiscal years, J. Coons and R. A. Pratt each owned 25 shares or a total of 10 per cent of the warehouse company's stock, but owned no stock in the cotton mills company. Thus, during 1918 and 1919, 35 per cent of the warehouse company stock was owned by persons who held no stock in the other company. During those same years, 42.38 per cent of the cotton mills company's stock was owned by a person who held no stock in the warehouse company. And it is not shown that the stock standing in the names of these persons was "controlled" in any manner by anyone else.

Most of the remaining stockholders did not own the same percentage of stock in each company. For example, in 1918, T. W. Pratt owned 13.56 in one corporation and 31.6 in the other. Emma Pierce owned 18.65 in the one and 8.4 in the other. The record fails to show the relation of these persons to each other and does not disclose any facts from which we can determine whether or not they constituted "the same interests." But, if it be true that all of the holders of stock in both companies together constituted "the same interests," yet they owned and/or controlled in the years 1918 and 1919 only 65 per cent of the outstanding stock of the one company and 57.62 per cent of the stock of the other. Under no theory approved by the courts or accepted in our prior decisions could it be said that these facts establish that "substantially all" of the stock of these two corporations was "owned or controlled by the same interests" in 1918 or 1919.

During the fiscal year ended in 1920, the percentages of stock owned by holders common to both companies was somewhat higher, amounting to approximately 69.53 in one company and 90 in the other. However, in the absence of any facts from which we can determine what persons constituted "the same interests," we can not say that the respondent erred in holding that the petitioners were not affiliated in said year. We can not say that the above percentages of stock ownership constitute ownership of substantially all the stock in both corporations, nor does the evidence establish control of minority stock not owned.

We hold, therefore, that the petitioners were not affiliated within the meaning of the statute during any of the taxable years involved.

In reaching this conclusion, we have carefully considered the opinion of the Court in *Pelican Ice Co.* v. *Commissioner*, 37 Fed. (2d) 285, and we think the instant case on the facts is clearly distinguishable therefrom.

In the *Pelican* case Behre and his family owned more than 95 per cent of the ice company's stock and they owned or controlled directly or indirectly through their holdings in the ice company, 90 per cent of the cold storage company's stock, if the stock held by Edenborn

be not considered. The Court found that Edenborn held his stock as security for the amount he had advanced upon the purchase price of certain land, and that he could not sell his stock to an outsider without the consent of Behre and his family.

No such situation is presented in the case at bar. As pointed out above, if we regard all the holders of stock in both companies here as constituting "the same interests," they owned or controlled in 1918 and 1919 only 65 per cent of the stock in one company and 57.62 per cent in the other. In 1920, the holders common to both companies held 90 per cent of the stock in the one and 69.53 in the other. We can not conclude, therefore, as did the Court in the *Pelican* case, that "substantially all" of the stock in these two corporations was held during the taxable years by "the same interests."

The petitioners having raised the issue that the respondent failed to use proper comparatives in determining the profits tax under the provisions of section 328 of the Revenue Act of 1918, and all other issues having been disposed of herein, unless the parties agree upon the correct amount of the deficiencies recomputed in accordance with this opinion,

> *Further proceedings will be had under Rule 62 (c).*